```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```
JANET PRUTER, et al.,

       Plaintiffs,

-against-

LOCAL 210, INTERNATIONAL
BROTHERHOOD OF TEAMSTERS,

       Defendant.

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _8/11/2021_
```

15 Civ. 1153 (AT)

**ORDER**

ANALISA TORRES, District Judge:

  Plaintiffs, former employees of World Airways, Inc. ("World"), bring this action against Defendant, Local 210, International Brotherhood of Teamsters ("Local 210"), claiming that Defendant violated its duty of fair representation under the Railway Labor Act ("RLA"), 45 U.S.C. § 151 et seq., by failing to fulfill its promise to fund a part of Plaintiffs' pensions. *Pruter v. Local 210, Int'l Bhd. of Teamsters*, No. 15 Civ. 1153, 2020 WL 777333, at *1 (S.D.N.Y. Feb. 18, 2020) (the "February 2020 Order"). Defendant now brings a motion *in limine* to exclude testimony and evidence in support of Plaintiffs' theory of damages as irrelevant. ECF No. 139. For the reasons stated below, Defendant's motion is DENIED.

## BACKGROUND[1]

  In 1996, Plaintiffs, former employees of World, a now-defunct airline, transferred their union membership to Local 210, and Local 210 began negotiating a new collective bargaining agreement with World. February 2020 Order at *1. Among other issues, flight attendants were dissatisfied with the World pension plan, and wanted to switch to a "defined benefit" plan. *Id.* On June 27, 1996, Local 210 and World reached a tentative collective bargaining agreement,

---

[1] The Court presumes familiarity with the facts and procedural history as set forth in the Court's summary judgment order, *Pruter v. Local 210, Int'l Bhd. of Teamsters*, No. 15 Civ. 1153, 2020 WL 777333 (S.D.N.Y. Feb. 18, 2020), but sets them forth briefly here.

which provided for a ten percent wage increase on ratification and a three percent increase each year thereafter, and stated that World would begin making contributions to the Local 210 Pension Plan (the "Plan") on behalf of the flight attendants. *Id.* at *2. In encouraging the union members to ratify the agreement, Local 210 made representations regarding a pension plan feature wherein World would fund past service credits, that is, the credits to all members back to the date of their hire. *Id.* at *2. The union members then voted to ratify the collective bargaining agreement. *Id.* at *3. Following the contract ratification, the Trustees of the Local 210 Pension Plan voted to admit World as a contributing employer and to provide past service credits to the World flight attendants after a five-year vesting period. *Id.*

In 1996, the Plan Trust Agreement did not allow past service credits to be cancelled once awarded. *Id.* at *3. But in 2008, the agreement was amended to allow the Trustees to cancel past service credits to preserve the actuarial soundness of the fund. *Id.* In 2012, World filed for bankruptcy and ceased operations; the Plan assessed World $18,000,000 in withdrawal liability. *Id*. That liability was discharged in the bankruptcy. *Id.* As a consequence, the Plan faced a shortfall, and in December 2012 the Trustees voted to cancel the past service credits provided to Plaintiffs. *Id*.

The cancellation of credits reduced the monthly pension benefits available to Plaintiffs. Am. Compl. ¶ 114, ECF No. 4. After pursuing administrative relief through the Plan, *id*. ¶ 116, Plaintiffs filed this action on February 18, 2015, ECF No. 1. Plaintiffs alleged that Local 210 in fact (a) never obtained an agreement from World to fully fund the past service credits, or obtained such an agreement but failed to enforce the obligation incurred by World, and (b) never contributed the $700,000 of its own assets it had promised to contribute to the Plan. Am. Compl. ¶ 117. They brought fraud and breach of contract claims against Local 210. *Id*. ¶¶ 120–24.

On February 8, 2016, this Court dismissed the complaint on the grounds that Plaintiffs' claims against Local 210 were preempted by the RLA, and that any RLA claim was barred by a six-month statute of limitations.  *Pruter v. Local 210, Int'l Bhd. of Teamsters*, No. 15 Civ. 1153, 2016 WL 908303, at *3 (S.D.N.Y. Feb. 8, 2016); *see* ECF No. 27 at 7.  On appeal, the Second Circuit held that the Court should have borrowed the three-year statute of limitations from the Employee Retirement Income Securities Act ("ERISA") for the RLA claim.  *See Pruter v. Local 210, Int'l Bhd. of* Teamsters, 858 F.3d 753, 761 (2d Cir. 2017); ECF No. 30 at 20.  Accordingly, the appeals court found that Plaintiffs could assert a timely RLA claim, and remanded for further consideration.  *Id.* at 763.  On remand, this Court held that Plaintiffs could recover the value of their lost past service credits and that Plaintiffs' complaint stated a claim under the RLA for breach of the duty of fair representation, because the complaint's allegations made it "plausible that union members voted to approve the agreement because of the union's assurances to fund their pensions."  *Pruter v. Local 210, Int'l Bhd. of Teamsters*, No. 15 Civ. 1153, 2017 WL 6513648, at *5–6; ECF No. 39 at 12 ("December 2017 Order").

On March 7, 2019, Defendant moved for summary judgment, ECF No. 71, asserting that Plaintiffs failed to produce evidence that (1) Defendant had represented that it would fund or guarantee past service credits, ECF No. 76 at 16; and (2) the alleged misrepresentations had caused their injuries, *id*. at 20.  On February 18, 2020, this Court denied Defendant's motion, holding that "the evidence put forward by Plaintiffs could be sufficient for a jury to conclude that Defendant represented that it would ensure there was sufficient funding to cover past service credits," and "Plaintiffs have produced sufficient evidence to carry their burden on the question of whether Defendant's representations led to ratification of the collective bargaining agreement."  February 2020 Order at *5, *9.

3

On December 21, 2020, Defendant filed this motion *in limine*. ECF No. 139.[2]

## DISCUSSION

I.     Legal Standard

"The purpose of an *in limine* motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Hart v. RCI Hosp. Holdings, Inc.*, 90 F. Supp. 3d 250, 257 (S.D.N.Y. 2015) (citation omitted).  Courts should exclude evidence on a motion *in limine* only if it is "clearly inadmissible on all potential grounds." *Nat'l Union Fire Ins. Co. of Pittsburgh v. L.E. Myers Co.*, 937 F. Supp. 276, 287 (S.D.N.Y. 1996) (citation omitted).  A court's ruling on such a motion is "subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in [a party's] proffer." *Luce v. United States*, 469 U.S. 38, 41 (1984).

Federal Rule of Evidence 402 provides that "unless an exception applies, all '[r]elevant evidence is admissible,'" *United States v. White*, 692 F.3d 235, 246 (2d Cir. 2012) (quoting Fed. R. Evid. 402), and irrelevant evidence is inadmissible, Fed. R. Evid. 402.  The "standard of relevance established by the Federal Rules of Evidence is not high." *United States v. Southland Corp.*, 760 F.2d 1366, 1375 (2d Cir. 1985) (citation omitted); *see United States v. Al-Moayad*, 545 F.3d 139, 176 (2d Cir. 2008) (noting that the relevance threshold is "very low").  "Evidence is relevant when 'it has any tendency to make a [material] fact more or less probable than it would be without the evidence.'" *White*, 692 F.3d at 246 (quoting Fed. R. Evid. 401).  "A material fact is one that would 'affect the outcome of the suit under the governing law.'" *Beth*

---

[2] Due to the COVID-19 pandemic, the trial in this action was adjourned to April 4, 2022, and the case stayed pending further order of this Court.  ECF No. 178.  The Court's decision on this motion *in limine* does not affect that stay.

*Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc*., 448 F.3d 573, 579 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)).

    II.    <u>Analysis</u>

Defendant argues that Plaintiffs' theory that they can recover as damages the value of their cancelled past service credits is legally and factually impossible, and, therefore, any evidence on the theory is irrelevant. Def. Mem. at 1, ECF No. 140.

Initially, the law of the case establishes that Plaintiffs can recover the value of the past service credits. *Arizona Premium Fin. Co. v. Employers Ins. of Wausau, of Wausau Am Mut. Co.*, 586 F. App'x 713, 716 (2d Cir. 2014) ("[T]he law of the case doctrine 'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case.'" (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983))). In the December 2017 Order, the Court held that, "if Local 210 breached the duty of fair representation by failing to fulfill its promise to fund Plaintiffs' past service credits, paying each Plaintiff the value of their lost past service credits would recompense them for the union's breach." December 2017 Order at *5. The Court then reaffirmed this holding in the February 2020 Order, in the course of determining "the exact legal injury for which Plaintiffs are seeking compensation." February 2020 Order at *8. Rejecting Defendant's contention that "if Plaintiffs have suffered any cognizable injury, it is the diminished wage increase that they allegedly accepted in return for funding of past service credit," the Court reiterated that, "[i]n a prior opinion, the Court already addressed this issue, and held that Plaintiffs can recover for the loss of their pension benefits . . . . The question, therefore, is whether Plaintiffs can show that Defendant's misrepresentations caused the loss of their past service credits." *Id.*

Moreover, in the briefing for both the December 2017 Order and the February 2020 Order, the issue of Plaintiffs' recovery of the value of their past service credits was squarely briefed, echoing many of the arguments made in the motion *in limine* brief and reply. *See* ECF Nos. 35 at 7–8, 38 at 2–3, 76 at 20–21, 83 at 18–19, 84 at 10. The law of the case is that Plaintiffs are permitted to recover the value of their past service credits. *Aramony v. United Way of Am.*, 254 F.3d 403, 410 (2d Cir. 2001) ("Courts apply the law of the case doctrine when their prior decisions in an ongoing case either expressly resolved an issue or necessarily resolved it by implication.").

The application of the law of the case doctrine, however, is discretionary, *id.* at 410, and a court may reconsider a prior non-final decision, *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) (holding reconsideration is warranted for "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice." (quotation marks and citation omitted)). Defendant argues that insofar as this is the law of the case, it is in error, and instead Plaintiffs "must prove that absent the alleged misrepresentations, they would have been able to obtain inalienable [past service credits]." Def. Mem. at 14.

Defendant is correct that Plaintiffs must prove causation, but this requirement does not foreclose Plaintiffs from recovering the value of the past service credits. In an RLA claim for breach of the duty of fair representation, "the challenging members must 'demonstrate a causal connection between the union's wrongful conduct and their injuries.'" *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010) (quoting *Spellacy v. Airline Pilots Ass'n-Int'l*, 156 F.3d 120, 126 (2d Cir. 1998)). That is, Plaintiffs must show that "absent the alleged breach," the injury would not have occurred. *Spellacy*, 156 F.3d at 130; *see also Sim v. N.Y. Mailers' Union*

6

*No. 6*, 166 F.3d 465, 472 (2d Cir. 1999) ("[P]laintiffs must demonstrate that any alleged misconduct had an effect on the outcome of the second ratification vote.").

The Second Circuit has not clarified the exact contours of this causation standard outside of the arbitration context. *Cf. Johnson v. Nat'l Football League Players Ass'n*, No. 17 Civ. 5131, 2018 WL 8188558, at *8 (S.D.N.Y. Oct. 3, 2018), *aff'd*, 820 F. App'x 51 (2d Cir. 2020). However, in adopting the standard in *Spellacy*, the Second Circuit cited cases from the Ninth and Seventh Circuits, which required the plaintiffs to show that, in the context of arbitration, the union's breach "actually affected" the outcome of an arbitration that led to injury, *Williams v. Romano Bros. Beverage Co.*, 939 F.2d 505, 508 (7th Cir. 1991), or, in the context of a ratification dispute, "(1) absent the misrepresentations, the outcome of the ratification vote would have been different; *and* that (2) had it been different, the company would have acceded to the union's demands," *Ackley v. W. Conference of Teamsters*, 958 F.2d 1463, 1472 (9th Cir. 1992) (emphasis in original). *Spellacy*, 156 F.3d at 126. Notably, the Second Circuit has not adopted the "direct nexus" requirement of the Third Circuit. *See Deboles v. Trans World Airlines, Inc.*, 552 F.2d 1005, 1018 (3d Cir. 1977).[3]

Accordingly, Plaintiff must demonstrate that Defendant's alleged misconduct "had an effect on" their loss of the past service credits. *Sim*, 166 F.3d at 472. Plaintiffs purport to do so by demonstrating Defendant breached the duty of fair representation not merely through its misconduct in the ratification of the agreement, but also by failing to carry out its obligations on

---

[3] *Ackley* cited the Ninth Circuit case *Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, which cited *Deboles*, but did not adopt the *Deboles* standard. *Ackley v. W. Conference of Teamsters*, 958 F.2d 1463, 1472 (9th Cir. 1992). Although the *Acri* district court opinion mentioned the proximate cause standard, the Ninth Circuit did not. *Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1397 (9th Cir. 1986); *see also Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 595 F. Supp. 326, 330 (N.D. Cal. 1983) (titling the causation section "proximate cause" and discussing the *Deboles* standard, but not articulating a precise standard because plaintiffs conceded that they could not prove that "absent the alleged misrepresentation," the injury would not have occurred), *aff'd*, 781 F.2d 1393 (9th Cir. 1986).

the agreement once made.  Pl. Opp'n at 19–20, ECF No. 161; *see Spellacy*, 156 F.3d at 126 ("[The duty of fair representation under the RLA] extends to both the negotiation of a collective bargaining agreement, and its enforcement and administration." (citation omitted)). To prove this two-step theory of misconduct resulted in the loss of the past service credits, as the Court noted in the February 2020 Order, Plaintiffs must prove both that "Defendant's statements caused ratification of the agreement . . ., because but for the collective bargaining agreement, Plaintiffs would not have been part of the Plan," and that "Defendant's failure to live up to its commitment to fund the past service credit caused the eventual reduction in their pension benefits."  February 2020 Order at *8–9.  To accomplish the latter may indeed be difficult, as Defendant argues.  However, should Plaintiffs demonstrate to the jury that Defendant's conduct "actually affected" their loss of past service credits, they are not legally foreclosed from recovery on that theory.

Accordingly, the Court's prior determination that damages in the form of the value of the past service credits is available to Plaintiffs, should they prove a breach of the duty of fair representation, is not in error.

Defendant also argues that Plaintiffs are legally and factually foreclosed from proving this causation standard.  Def. Mem. at 5–13.  As just discussed, Plaintiffs are not legally foreclosed from meeting this causation standard.

Moreover, Plaintiffs are not factually unable to demonstrate that causality.  First, Defendant argues that the intervening events of the Plan Trustees voting to permit cancellation of the past service credits and World's withdrawal from the Plan make it impossible to show that Defendant's actions caused Plaintiffs to lose their past service credits.  Def. Mem. at 9.  Second, Defendant contends that because any agreement between it and World would not have stopped

8

the Plan Trustees from cancelling the past service credits, Defendant's actions are irrelevant to the cancellation. Def. Mem. at 11. Third, Defendant argues that its actions were unrelated to World's filing for bankruptcy and rejecting its contractual obligations. Def. Mem. at 11–12. However, although these facts and arguments may make it more difficult for Plaintiffs to demonstrate causation, they do not prevent Plaintiffs from offering evidence to rebut them. Evidence of this type would make the material fact of causation "more or less probable than it would be without the evidence," *White*, 692 F.3d at 246, and thus is "of consequence to the determination of the action," *United States v. Kaplan*, 490 F.3d 110, 121 (2d Cir. 2007). Therefore, as a general matter, evidence regarding Plaintiffs' loss of the value of the Past service credits is relevant, and thus admissible.

## CONCLUSION

For the foregoing reasons, Defendant's motion *in limine* is DENIED.

SO ORDERED.

Dated: August 11, 2021
       New York, New York

_____
ANALISA TORRES
United States District Judge